IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 13-cv-01370-LTB-KLM

TROY WALKER,

      Plaintiff,

v.

INTERNATIONAL FIDELITY INSURANCE COMPANY, a New Jersey corporation;
ALLEGHENY CASUALTY COMPANY, a Pennsylvania corporation; and
AIA HOLDINGS, INC., d/b/a AIA SURETY, a Delaware corporation,

      Defendants.

_____

# ORDER
_____

This case is before me on Defendants' Motion to Dismiss [Doc # 12]. After consideration of the motion, all related pleadings, and the case file, I deny Defendants' motion.

## I. Background

In this action, Plaintiff, a licensed bail bond agent who served as a general insurance agent for other licensed bail bond agents ("Sub-Agents"), asserts nine claims arising out of his transfer of his book of business to Defendants. Defendants seek to dismiss Plaintiff's claims based primarily on the terms of the related Consulting Agreement that Plaintiff entered into with Defendants International Fidelity Insurance Company ("Fidelity") and Allegheny Casualty Company ("Allegheny Casualty") (collectively "the Company Defendants").

Under the Consulting Agreement, Plaintiff was to provide the Company Defendants with consulting services on Colorado bail bond matters and to solicit his Sub-Agents and other Colorado bail bond agents to enter into Producer Underwriter Agreements with the Company

Defendants in exchange for payment of a monthly fee based on premiums reported to the Company Defendants under such Agreements. *See* Consulting Agreement attached as Exhibit B to Complaint, ¶¶ 3 & 4. The Consulting Agreement was for a term of eight years unless it was terminated earlier for "cause," which is defined as a breach by Plaintiff of the Consulting Agreement's confidentiality and non-compete provisions. *Id.* at ¶¶ 2, 7 & 8. The Consulting Agreement further provides:

> This Agreement contains the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings, oral or written, with respect to such matters. The language in this Agreement supersedes the provisions of any other agreement between the parties hereto to the extent inconsistent herewith. This Agreement may not be amended, modified, or supplemented in any respect except by a subsequent written agreement entered into by both parties.
>
> ...
>
> Each party has had the opportunity to consult with financial advisors and legal counsel regarding this Agreement, and the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement.

*Id.* at ¶¶ 14 & 16.

In the first two years of the term of the Consulting Agreement, Defendants paid Plaintiff an average monthly fee of $13,000-$15,000 based on revenue generated by his Sub-Agents. Complaint, ¶50. Then in 2013, Defendants decided to stop writing bail bond insurance in Colorado and terminated all of its agents in Colorado, including Plaintiff and Plaintiff's Sub-Agents. *Id.* at ¶¶ 65 & 70. Defendants referred Plaintiff's Sub-Agents to other insurance companies. *Id.* at ¶ 64.

By letter dated March 21, 2013, Plaintiff demanded assurance from Defendants that they would continue to pay him a monthly fee measured by his Sub-Agents continued production regardless of where it was now occurring for the remaining term of the Consulting Agreement or promptly pay him the amount of $930,000, representing the loss and damages their conduct caused him. *See* Exhibit E to Complaint. In response, Defendants denied breaching the Consulting Agreement and stated that they would continue to pay Plaintiff a monthly fee "[t]o the extent premium is reported to the companies by the subject agents." *See* Exhibit F to Complaint. After this exchange, Plaintiff received one further payment from Defendants in the amount of $3,627.01. Complaint, ¶90.

Plaintiff asserts claims against the Company Defendants for breach of express and implied contract duties and quantum meruit/implied contract and against all Defendants for promissory estoppel; false representation; concealment and non-disclosure; negligent misrepresentation/non-disclosure; breach of fiduciary duty; intentional interference with prospective business advantage; and civil theft. By their motion, Defendants seek the dismissal of all of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6).

### III.  Standard of Review

Under Rule 12(b)(6), "[d]ismissal is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face." *United States ex rel. Conner v. Salina Regional Health Center, Inc*., 543 F.3d 1211, 1217 (10th Cir. 2008) (quotations and citations omitted). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)

(*citing Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### IV.  Analysis

### A.  Plaintiff's Claim for Breach of Express and Implied Contract

Defendants first argue that Plaintiff's contract claims against the Company Defendants should be dismissed because Plaintiff has not pled that the Company Defendants failed to perform under the Consulting Agreement but rather concedes that they paid him the requisite monthly fees based on bail bond premiums reported to them by the Sub-Agents. Defendants further argue that the integration clause in the Consulting Agreement precludes Plaintiff from adding a new obligation that the Company Defendants pay him approximately $150,000 a year for a period of eight years regardless of whether any premiums are reported to them by the Sub-Agents. These arguments are predicated on too narrow a reading of Plaintiff's breach of contract claim.

In support of his breach of contract claim, Plaintiff alleges:

> [The Company Defendants] have breached and are continuing to breach , the express and implied terms of the Consulting Agreement. [The Company Defendants'] breaches have included:
>
> (a) ... failure to continuously maintain the Term of the Consulting Agreement for the fixed period of eight years;
>
> (b) ... failure to pay [Plaintiff] his monthly Fee during the full Term of the Contract;
>
> (c) ... failure to recognize the Sub-Agents as "*Consultants'* (sic) Sub-Agents during the eight-year Term for purposes of preserving, protecting, and maintaining [Plaintiff's] right to compensation based on their production; and

> (d) their failure to cancel the non-compete provisions of the Consulting Agreement.
>
> In addition, [the Company has] breached [its] obligations of good faith and fair dealing by [its] acts, conduct, and omissions described ... above ....

Complaint at ¶¶ 100 & 101.

Based on the express language of the Consulting Agreement, it is plausible that the Company Defendants breached it by failing to honor their obligations for the full 8-year term and by failing to cancel the non-compete provisions. *See* Consulting Agreement, ¶¶ 3.F ("During the term of this Agreement, [Plaintiff] ... shall remain an appointed bail bond agent with the Company."); *Id.* at 8(c)-(d) (prohibiting Plaintiff from engaging in certain bail bond activities in Colorado during 8-year term of Consulting Agreement and three years thereafter "unless ... the Company ceases to do business as a licensed surety in the State of Colorado whereupon [these provisions] will be cancelled."). Since the monthly fees owing to Plaintiff under the Consulting Agreement are dependent upon premiums reported to the Company Defendants pursuant to Purchase Underwriter Agreements procured by Plaintiff with his Sub-Agents and other Colorado bail bond agents, it is unclear what value, if any, the Consulting Agreement had once the Company Defendants ceased writing bail bond insurance in Colorado. Nonetheless, Plaintiff has plausibly pled that the Company Defendants breached express terms of the Consulting Agreement.

As for Plaintiff's claim that the Company Defendants breached their implied duties under the Consulting Agreement, this claim is predicated on the implied duty of good faith and fair dealing that exists in all contracts under Colorado law. *See Amoco Oil Co., v. Ervin,* 908 P.2d 493, 498 (Colo. 1995). This duty limits contracting parties' ability to act unreasonably in

contravention of the other's reasonable expectations even if the express contractual terms appear to permit such actions. *Duffield v. First Interstate Bank of Denver, N.A.,* 13 F.3d 1403, 1405-6 (10th Cir. 1993). By ceasing to write bail bond insurance in Colorado and thereby depriving Plaintiff of the bulk of the payments he expected to receive over the 8-year term of the Consulting Agreement, the Company Defendants plausibly beached their duty of good faith and fair dealing. Thus, Plaintiff has also sufficiently pled a claim against them for breach of implied duties under the Consulting Agreement.

**B. Plaintiff's Claims for Quantum Meruit/Implied Contract and Promissory Estoppel**

Defendants argue that Plaintiff's claims for quantum meruit and promissory estoppel are barred by the existence of an enforceable contract addressing the same subject matter. The fact that Plaintiff may not be able to recover on both his breach of contract claims and his claims for quantum meruit and promissory estoppel does not, however, preclude him from pleading multiple theories of recovery. *Hemman Mgmt. Servs. V. Mediacell, Inc.,* 176 P.3d 856, 860 (Colo. App. 2007). I turn then to whether Plaintiff has pled a plausible claim under these theories of recovery.

The elements of a claim for quantum meruit are "(1) at the plaintiff's expense, (2) the defendant received a benefit; (3) under circumstances that would make it unjust for defendant to retain the benefit without paying for it." *Hannon Law Firm. LLC v. Melat, Pressman & Higbie, LLC,* 293 P.2d 55, (Colo. App. 2011).

Plaintiff has alleged that he provided a benefit by rendering services and transferring his book of business to the Company Defendants with the expectation that he would be adequately compensated. Plaintiff has further alleged that the Company Defendants failed to fulfill their

promise to provide him with adequate compensation and instead paid him only a fraction of that contemplated by the parties. These allegations are sufficient to support a plausible claim for quantum meruit/implied contract against the Company Defendants.

The elements of a claim for promissory estoppel are "(1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that the promise would induce an action or forebearance by the promisee; (3) the promisee in fact reasonably relied on the promise to the promissee's detriment; and (4) the promise must be enforced to prevent injustice." *Marquardt v. Perry,* 200 P.3d 1126, 1129 (Colo. App. 2008) (*citing Nelson v. Elway,* 908 P.2d 102, 108 (Colo. 1995)).

Plaintiff has alleged that the Company Defendants promised that they were giving him an eight-year deal as an enticement for him to transfer his book of business and that he relied on this promise in making the transfer and failing to protect his relationships with his Sub-Agents. Plaintiff has further alleged that the Company Defendants diverted his Sub-Agents' business to third-parties thereby depriving him of an opportunity to be resume the relationships he had with these parties prior to entering into the Consulting Agreement. These allegations are likewise sufficient to support a plausible claim for promissory estoppel against the Company Defendants.

**C. Plaintiff's Claims for False Representation and Concealment/Non-Disclosure**

Defendants first argue that Plaintiff has failed to plead his fraud claims with particularity as required by Fed. R. Civ. P. 9(b). I disagree.

In his 26-page, single-spaced Complaint, Plaintiff identifies representatives of Defendants with whom he dealt by name, specific representations that were made by these representatives, and how these representations turned out to be false. Among other things,

Plaintiff alleges that in or about September of 2010, he had discussions with Defendant AIA Holdings, Inc.'s (AIA) Chief Legal Officer, Jerry W. Watson, during which Mr. Watson assured him that Defendants would honor their deal for its eight-year term and that he would be consulted before Defendants terminated any of Plaintiff's Sub-Agents or reduced their rates for any reason. *See* Complaint, ¶¶ 22-26. Plaintiff further alleges that Defendants only fulfilled their obligations under the Consulting Agreement for a period of two years and that Defendants began terminating Plaintiff's Sub-Agents without notice to him. *See* Complaint ¶¶ 50 & 58 - 66. Nothing more is required under Fed. R. Civ. P. 9(b). *See Schwartz v. Celestial Seasonings, Inc.,* 124 F.3d 1246, 1253 (10th Cir. 1997) ("Rule 9(b) does not require that a complaint set forth detailed evidentiary matter ... or that the allegations be factually or legally valid.").

Defendants next argue that Plaintiff failed to plead all of the essential elements of his fraud claim. Defendants specifically argue that Plaintiff's fraud claims fail because Plaintiff has failed to allege material facts that should have been disclosed or were misrepresented, knowledge on the part of Defendants that such facts should have been disclosed or were being misrepresented, and that Defendants intended such concealed or misrepresented facts to be acted upon. *See Ballow v. PHICO Ins. Co.,* 875 P.2d 1354, 1361 (Colo. 1993) (setting forth elements of fraudulent misrepresentation and concealment claims). However, a review of Plaintiff's Complaint reveals that Plaintiff has alleged all of the requisite elements. *See* Complaint, ¶¶ 117 - 123 & 131- 138. Defendants' argument then is really that Plaintiff cannot prove these elements which is not an appropriate inquiry under Rule 12(b)(6).

I also reject Defendants' argument that Defendants' alleged representations prior to execution of the Consulting Agreement are non-actionable since they were mere expressions of

opinion about the future. As Plaintiff notes, "a claim of fraud may be premised upon one party's promise concerning a future act ... coupled with a present intention not to fulfill the promise." *Brody v. Bock,* 897 P.2d 769, 776 (Colo. 1995) (internal quotations and citations omitted). While Defendants assert that Plaintiff's allegation that they knew two years prior to the execution of the Consulting Agreement that they did not intend to stay in the Colorado bail bond market for its full eight-year term is inconceivable, Plaintiff should have an opportunity to explore Defendants' intentions at the time the Consulting Agreement was executed through discovery.

Finally, Defendants' argument that Plaintiff's fraud claims should be dismissed because they sound in contract is without merit at this stage of the proceedings. Defendants have taken the position that they were under no obligation to continue making payments to Plaintiff for the full eight-year term of the Consulting Agreement regardless of circumstances. If Defendants prevail on this argument, which is supported by the plain language of the Consulting Agreement and the evolving circumstances, Plaintiff should not be precluded from pursuing alternative or supplemental theories of recovery. Additionally, Defendant AIA is not a party to the Consulting Agreement and therefore cannot escape liability on any of Plaintiff's claims by reliance on it.

In conclusion then, Plaintiff claims against Defendants for false representation and concealment/non-disclosure are sufficiently pled and not subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

### D. Plaintiff's Claim for Negligent Misrepresentation/Non-Disclosure

Defendants' arguments with respect to Plaintiff's claim for negligent misrepresentation/ non-disclosure mirror those that Defendants made with respect to Plaintiff's claims for false

representation and concealment/non-disclosure.  Specifically, Defendants argue that Plaintiff has failed to provide the requisite specificity and that this claim is premised on Defendants' failure to perform under the Consulting Agreement.  Accordingly, for the same reasons set forth above, Plaintiff's claim for negligent misrepresentation/non-disclosure is not subject to dismissal for failure to state a claim upon which relief may be granted.

**E.  Plaintiff's Claim for Breach of Fiduciary Duty**

Defendants argue that Plaintiff has failed to plead a plausible claim for breach of fiduciary duty because there was no fiduciary relationship between the parties and because this claim is an improper attempt to expand his breach of contract claim.  I disagree.

Citing a case applying Oklahoma law, Defendants argue that no fiduciary relationship can result from circumstances such as those present here where contracting parties deal with each other at arm's length for mutual benefit.  Plaintiff has alleged, however, that he had a long-standing relationship with Defendants prior to the negotiation of the Consulting Agreement and that Defendant occupied a superior position over him.  *See* Complaint, ¶¶ 15 & 162.  These circumstances may give rise to a fiduciary relationship between the parties.  *See Moses v. Diocese of Colorado,* 863 P.2d 310, 321 (Colo. 1993) ("A fiduciary relationship may arise where one party occupies a superior position relative to another."); *Dolton v. Capital Fed. Sav,. & Loan Ass'n,* 642 P.2d 21, 23 (Colo. App. 1981) ("... a fiduciary duty may arise from a business or confidential relationship which impels or induces one party to relax the care and vigilance it would and should have ordinarily exercised in dealing with a stranger.").  While Defendants emphasize Plaintiff's experience in the bail bond industry, the relative bargaining power and sophistication of the parties are questions of fact that cannot be resolved in the context of

Defendants' motion to dismiss.  I therefore conclude that Plaintiff has sufficiently pled the existence of a fiduciary relationship giving rise to corresponding fiduciary duties.

Plaintiff alleges that Defendants were acting as his fiduciaries

> with respect to the preservation and protection of his economic and proprietary rights and interests in his book of business, his relationships with his Sub-Agents, his proportionate share of the revenue streams to be generated by his Sub-Agents over the course of the promised and anticipated eight-year term, and the continuous maintenance of necessary business and contractual relationships with his Sub-Agents - in order to ensure [Plaintiff's] continuous receipt of reasonably expected consideration and compensation for his book of business.

Complaint, ¶ 163.  Plaintiff further alleges that Defendants breached their corresponding fiduciary duties to him by their conduct in abandoning and diverting his book of business. Complaint, ¶¶ 164 & 57-81.

Beyond conclusory statements, Defendants offer little support for their argument that Plaintiff's breach of fiduciary duty claim is an improper attempt to expand his breach of contract claim.  In particular, Defendants do not cite any specific terms of the Consulting Agreement that address how the Company Defendants were to deal with Plaintiff's Sub-Agents in the event that they ceased writing bail bond insurance in Colorado and terminated them.  Although Plaintiff seems to argue that the Consulting Agreement's characterization of the Sub-Agents as Plaintiff's Sub-Agents created a contractual duty to help him protect his rights in his book of business, I decline to conclude at present that such general language created specific duties in this regard as a matter of law.  In addition, Defendants argue that some of their alleged fiduciary duties are in direct contradiction to the express terms of the Consulting Agreement to which AIA is not a party in any event.  Under these circumstances, Defendants are not entitled to the dismissal of Plaintiff's breach of fiduciary duty on the basis that they owed no duties to him that were

independent of the Consulting Agreement. *See Town of Alma v. AZCO Constr., Inc.,* 10 P.3d 1256, 1263 (Colo. 2000) (duty independent of contractual obligations may support tort claim).

**F. Plaintiff's Claim for Intentional Interference with Prospective Business Advantage**

Colorado recognizes the tort of intentional interference with prospective business relations as defined in the *Restatement (Second) of Torts* §766B (1979):

> One who intentionally and improperly interferes with another's prospective contractual relation ... is subject to liability to the other for the pecuniary harm resulting from the loss of benefits of the relation, whether the interference consists of
>
> (a) inducing or otherwise causing a third party not to enter into or continue the prospective relation or
>
> (b) preventing the other from acquiring or continuing the prospective relation.

*Amoco Oil Co. v. Ervin,* 908 P.2d 493, 500 (Colo. 1995).

Defendants first argue that Plaintiff's claim for intentional interference with prospective business advantage fails to state a claim because it alleges that they tortiously interfered with their own contract, *i.e.* the Consulting Agreement. This argument is easily rejected by a review of the actual allegations in Plaintiff's Complaint which focus on Plaintiff's prospective relationships with his Sub-Agents once they were terminated by Defendants. *See* Complaint, ¶¶ 168-171. The fact that the measure of damages mirrors those that Plaintiff seeks to recover on his claim for breach of the Consulting Agreement does not alter the underlying basis for this claim.

Defendant also argue that this claim fails because Plaintiff has not pled facts showing prospective contracts with third parties. As Plaintiff notes, interference with prospective quasi-contractual and other restitutionary benefits is cognizable under this theory of recovery. *Amoco*

*Oil Co., supra.* Plaintiff has alleged that Defendant gave him no notice before terminating his Sub-Agents with whom he had built relationships over a twelve-year span and in fact referred them to other companies thereby depriving him of an opportunity to resume the relationships he had with these parties prior to entering into the Consulting Agreement. *See* Complaint, ¶¶ 168-171.

Finally, Defendants again argue that Plaintiff's claim for intentional interference with prospective business advantage should be precluded by his breach of contract claim. Again though, Defendants do not cite any specific terms of the Consulting Agreement that address how the Company Defendants were to deal with Plaintiff's Sub-Agents in the event that they ceased writing bail bond insurance in Colorado and terminated them. Furthermore, as previously noted, I decline to conclude at present that the Consulting Agreement created any duties in this regard as a matter of law. Plaintiff's claim for intentional interference with prospective business advantage is therefore not subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

**G. Plaintiff's Claim for Civil Theft**

Under C.R.S. § 18-4-801(1)(a) -(c), "a person commits theft when he or she knowingly obtains, retains, or exercises control over anything of value of another ... by deception" and either intentionally or knowingly uses, conceals, or abandons the thing of value so as to deprive the other person permanently of its use or benefit. Here, Plaintiff alleges that Defendants deceived him into tendering his book of business to them and then abandoned it and diverted it to others, thereby permanently depriving him of its use and benefit. *See* Complaint, ¶¶ 178, 186 - 7.

Defendants argue that Plaintiff's claim for civil theft should be dismissed because it is

based on the same allegations as his breach of contract claim.  The same reasoning that led me to reject this argument with respect to other tort claims asserted by Plaintiff is equally applicable to this claim.  In particular, I am unable to determine as a matter of law at this stage in the proceedings that the Consulting Agreement encompasses the same duties as those on which Plaintiff's claim for civil theft is based.  While this claim may ultimately fail under the facts and circumstances of this case, *see Makota USA, Inc.,* 250 P.3d at 629 (noting that civil theft statute has been narrowly construed in contract cases and citing supporting cases), it is nonetheless plausible under the standard of review applicable here.

### IV.  Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss [Doc # 12] is DENIED.


Dated: February   5  , 2014 in Denver, Colorado.

                                        BY THE COURT:


                                          s/Lewis T. Babcock
                                        LEWIS T. BABCOCK, JUDGE